# In the United States Court of Federal Claims

Case No. 08-839C

FOR PUBLICATION

DATED: December 5, 2011

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| | * | *Lummi Tribe v. United States*, 99 |
| **YAKAMA NATION HOUSING AUTHORITY**, | * | Fed. Cl. 584 (2011); Anti-Deficiency |
| | * | Act; 28 U.S.C. § 1500; NAHASDA; |
| *Plaintiff,* | * | Reauthorization Act of 2008, Pub. L. |
| v. | * | No. 110-411, 122 Stat. 4319 Trusts; |
| | * | Fiduciary Duties; Money-Mandating |
| | * | Statute |
| **THE UNITED STATES**, | * | |
| | * | |
| *Defendant.* | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

*Craig H. Kaufman,* Quarles & Brady, LLP, Tucson, AZ, for Plaintiff.

*Michael N. O'Connell*, Trial Attorney, Commercial Litigation Branch, Civil Division, with whom were *Tony West*, Assistant Attorney General*, Jeanne E. Davidson*, Director, *Donald E. Kinner*, Assistant Director, Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**SMITH, Senior Judge.**

Before the Court is Defendant's Motion to Dismiss requesting that the Court dismiss Plaintiff Yakama Nation Housing Authority's ("YNHA") complaint for lack of subject matter jurisdiction or for failure to state a claim upon which relief may be granted pursuant to Rules 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims.

In its complaint, YNHA alleges that it received annual housing grants, referred to as Indian Housing Block Grants ("IHBGs"), from the Department of Housing and Urban Development ("HUD") in each fiscal year from 1998 to 2010 through the grant allocation formula in the Native American Housing and Self-Determination Act ("NAHASDA"), 25 U.S.C.

§ 4101 et. seq.  YNHA contends that HUD improperly reduced YNHA's annual grants in each of those years and seeks to account for and recover those grant funds which YNHA contends the Government both unlawfully withheld as well as attempted to recapture.

After full briefing, oral argument and careful consideration the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss for the reasons set forth below.

## <u>BACKGROUND</u>

### Native American Housing and Self-Determination Act

In order "to consolidate the low income housing assistance and to simplify the distribution of funds" *Fort Peck Housing Auth. v. HUD,* 367 Fed. Appx. 884, 885 (10th Cir. 2010), *cert denied* 131 S. Ct. 347 (2010) ("*Fort Peck II*"), Congress enacted the Native American Housing and Self-Determination Act ("NAHSDA").  Pub. L. 104-330, § 107, Stat. 4016 (1996).   Taking effect after September 30, 1997, this law terminated previous Indian housing assistance under the 1937 Housing Act.  42 U.S.C. 1437 et. seq. (1994).   Unlike its predecessor, NAHSDA allocated annual block grants of funds to Indian tribes, determined by a distribution formula.  *Fort Peck II*, 367 Fed. Appx. at 885 (citing 25 U.S.C. §§ 4151, 4152, 4116).  If all the funds were not disbursed in the year, the appropriated funds were to be included into the next year's funding for distribution.

Congress established the formula by which the appropriated funds would be distributed. 25 U.S.C. § 4152(a). The formula is based upon factors reflecting need including: (1) The number of low-income housing dwelling units owned . . . ; (2) The extent of poverty and economic distress and the number of Indian families within Indian areas of the tribe; and (3) Other objectively measurable conditions as the Secretary and the Indian tribes may specify.  *Fort Peck II*, 367 Fed. Appx. at 885-86 (citing 25 U.S.C. 4152(b)).   Thereafter, a committee composed of 48 representatives of Indian tribes and 10 HUD representatives developed the regulations implementing NAHASDA.[1]   The allocation formula agreed upon has two components: (1) Formula Current Assisted Stock ("FCAS") and (2) need.  *Fort Peck II*, 367 Fed. Appx. at 886 (citing 24 C.F.R. § 1000.310).

The FCAS component is based upon a tribe's inventory of rental units and lease-to-own units (referred to as "Mutual Help" and "Turnkey III" units) as of the date the Act became effective.   The need component of the allocation formula is based upon seven criteria, including information derived from census data, such as the number of households in a tribe's population with income below a median income level, and the number of households living without kitchens and plumbing.  *Fort Peck II,* 367 Fed. Appx. at 886.  Each year, the funds appropriated are allocated by first calculating the FCAS component and then dividing the remaining funds under the need component; thus, a greater number of FCAS units reduce the amount available for the need component.

---

[1]  The regulations are found in Part 1000, Subpart D, of Title 24 of the Code of Federal Regulations. 24 C.F.R. §§ 1000.301 to 1000.340.

The FCAS component of the formula is the main focus of the present Complaint and the interpretation of the regulation that identifies when the lease-to-own units are no longer to be counted. *See* 24 C.F.R. § 1000.316.  Whether a lease-to-own unit will no longer be counted for purposes of the allocation formula is significant because, as stated above, the FCAS component is calculated first.  Therefore, if the lease-to-own unit is removed from the FCAS count, the tribe will receive a smaller FCAS-based portion of its housing grant from HUD and the overall housing grant it receives (including both the FCAS and "need" components) may, consequently also be smaller. As the lease-to-own units are conveyed to Indian families as intended by the Mutual Help and Turnkey III programs, the units are no longer counted in FCAS.  Thus, the funding previously used for funding FCAS becomes available for distribution under the need component.  24 C.F.R. §1000.324.

### The 2008 Amendment of NAHASDA

On October 14, 2008, Congress amended NAHASDA by enacting the Native American Housing Assistance and Self-Determination Reauthorization Act of 2008, Pub. L. No. 110-411, 122 Stat. 4319 (the "Reauthorization Act").  The amendment essentially adopted the provisions in HUD's regulation at 24 C.F.R. § 1000.318 providing for units to become ineligible for inclusion in FCAS when the tribes no longer own, or should no longer own, the units.

In addition, the Reauthorization Act specified that in order to file a successful claim regarding the formula for current assisted stock calculation or count involving an Indian housing block allocation for any fiscal year through fiscal year 2008, the action relating to such had to be filed no later than 45 days after the date of the Reauthorization Act (October 14, 2008). Reauthorization Act, § 301(2); 25 U.S.C. § 4152(b)(1)(E).  Thus, this provision required that any Indian tribe wishing to pursue a claim based upon the previous version of the statute and 24 C.F.R. § 1000.318 needed to file suit by November 28, 2008.  Plaintiffs filed this action before that deadline.

### The OIG Audit and Recommendation

In 2001, HUD's Office of Inspector General ("OIG") performed a nationwide audit of the NAHASDA program. The OIG conducted site visits and the audit report concluded that IHBG funds had not been properly allocated in previous years because they were based on housing units that do not qualify as FCAS.  HUD thereafter began seeking recovery of amounts it had paid for ineligible units.

### Prior Litigation of YNHA

In 2005, HUD relied upon the 1998 regulation, 24 C.F.R. § 1000.318, in its determination that it overpaid Forth Peck Housing Authority (Fort Peck) for dwelling units it no longer owned. Fort Peck partially repaid HUD, but then filed suit in the United States District Court for the District of Colorado stating that 24 C.F.R. § 1000.318 was invalid.  The court agreed, holding that § 1000.318 conflicted with 25 U.S.C. § 4152(b)(1), which mandated that HUD include "low-income housing dwelling units owned or operated at the time pursuant to a contract

between an Indian housing authority for the tribe and the Secretary." *Fort Peck Housing Auth. v. HUD*, 435 F. Supp. 2d 1125, 1132 (2006) ("*Fort Peck I*"). Before the case was heard on appeal, Congress passed the Reauthorization Act of 2008, which adopted the provisions of 24 C.F.R. § 1000.318. On appeal in 2010, the Tenth Circuit found that § 1000.318 complied with NAHASDA in accordance with the 2008 amendment and reversed its invalidation. *Fort Peck II*, 367 Fed. Appx. 884 (10th Cir. 2010).

On January 4, 2005, YNHA filed a petition for review with the United States Court of Appeals for the Ninth Circuit. YNHA appealed a November 4, 2004, letter from HUD to YNHA informing YNHA that it had received net Indian Housing Block Grant over-funding of $469,549, in fiscal years 1998 to 2004. YNHA was to contact HUD within 30 days to discuss repayment options that could include reducing previous or future year's funding. YNHA's petition asserted jurisdiction under 25 U.S.C. § 4161(a), which provides jurisdiction over a petition filed within 60 days of the receipt of "notice under [25 U.S.C. § 4161(a)] of the termination, reduction, or limitation of payments under this chapter." On December 7, 2010, the Ninth Circuit dismissed the petition for lack of jurisdiction.

On November 24, 2008, YNHA filed its complaint in this Court. In its complaint, YNHA claimed the Government owed YNHA money improperly withheld by HUD for the fiscal years 1998 through 2008. The following day, November 25, 2008, YNHA filed a substantially similar claim in the District Court for the District of Colorado. This Court must determine whether it has jurisdiction pursuant to 28 U.S.C. § 1500 to hear YNHA's claim. If so, this Court must determine which, if any, of YNHA's claims are time-barred under § 2501 and whether those remaining claims not time-barred are brought under a money-mandating statute.

## DISCUSSION

Defendant raises various arguments with respect to the reasons that the current case must be dismissed. The Court will address each argument below.

### A. Both The Prior and Subsequent Filings Do Not Bar YNHA's Complaint In This Court

The first question to be asked in any case is whether the court has jurisdiction to hear the case. In this case, Defendant claims that this Court lacks jurisdiction because of two other filings. In 2005, YNHA filed a petition for review in the Ninth Circuit, which remained pending until it was dismissed in December 2010. Defendant asserts that because the petition for review was pending when YNHA filed the complaint in this Court in 2008, the Court is required to dismiss this claim. The Defendant relies on 28 U.S.C. § 1500 as well as on *Keene Corp. v. United States*, 508 U.S. 200 (1993) and *Tohono O'Odham Nation v. United States*, 559 U.S. _ , 131 S.Ct. 1723 (2011) to support its argument. Contending that *Tohono* overturned *Tecon Engineers, Inc. v. United States*, 343 F.2d 943 (Ct. Cl. 1965), Defendant also argues that Plaintiff's subsequent filing in the district court divests this Court of jurisdiction under § 1500.

In light of Defendant's argument, the Court first turns its attention to the governing statute, 28 U.S.C. § 1500 which states:

The United States Court of Federal Claims *shall not have jurisdiction* of any claim for or in respect to which the plaintiff or his assignee *has pend*ing in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500 (emphasis added).  Although the language appears complicated, the Supreme Court stated in *Tohono O'Odham*, 131 S. Ct. at 1727 "[the statute] is more straightforward than its complex wording suggests.  The CFC has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents." *Tohono O'Odham*, 131 S. Ct. at 1727.  If there is a claim "pending" in another court at the time of filing, the claim may trigger § 1500 if the pending claim is "for or in respect to the same claim."  *Tohono O'Odham*, 131 S. Ct. at 1731 (referencing *Keene Corp. v. United States*, 508 U.S. 200 (1993)).  In *Keene*, the Supreme Court held that two suits are for or in respect to the same claim when they are "based on substantially the same operative facts . . . at least if there [is] some overlap in the relief requested."  *Keene*,  508 U.S. at 212.  In *Tohono O'Odham* the Supreme Court narrowed *Keene* by stating that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the [Court of Federal Claims], if they are based on substantially the same operative facts, regardless of the relief sought in each suit."  *Tohono O'Odham*, 131 S. Ct. at 1731.

## 1.  Subsequent filing in the District Court

The Court must determine whether the Plaintiff's claim filed in the District Court for the District of Colorado on November 25, 2008 divests the Court of jurisdiction pursuant to § 1500. Plaintiff relies on the premise articulated in *Tecon Engineers, Inc. v. United States*, in which the Court held that "§ 1500 does not prohibit two identical suits from proceeding so long as the action in the CFC . . . is filed first."  *Tohono O'Odham*, 131 S. Ct. at 1729 (referencing *Tecon Engineers, Inc. v. United States*, 343 F.2d 943 (Ct. Cl. 1965)).  Based on *Tecon*, Plaintiff argues that this Court retains jurisdiction over the claim because YNHA filed the complaint with this Court before filing in the district court.  Plaintiff maintains that *Tecon* remains good law because it was not considered in *Tohono O'Odham* in which the order of filings was reversed.[2]  *See id.* at 1727 (involving a claim filed in the CFC one day after the plaintiff filed with the Federal District Court); *id.* at 1729-30  ("The *Tecon* holding is not presented in [*Tohono O'Odham*] because the CFC action here was filed after the District Court suit.").  Thus, *Tecon* allows this Court to retain jurisdiction over the claim.  Conversely, Defendants argue that *Tohono O'Odham* overruled *Tecon* and precludes the Court from jurisdiction.[3]  Defendant suggests that the *Tohono O'Odham* Court expressed disapproval of *Tecon* because it deviated from § 1500's purpose to protect the court system against redundant litigation.

---

[2] As Plaintiff's brief was filed prior to the *Tohono O'Odham* decision, Plaintiff's argument concerning *Tohono O'Odham* appears in Oral Arg. Tr. 16:10-17:4.  All other arguments are found in both the transcript as well as Plaintiff's brief.

[3] Defendant's brief was similarly filed prior to the *Tohono O'Odham* decision, and Defendant's statements concerning *Tohono O'Odham* are found in Oral Arg. Tr. 5:13-17.

However, the Court rejects Defendant's argument and holds that *Tohono O'Odham* does not disturb *Tecon*. 343 F.2d 943. The language in § 1500 clearly states that the CFC retains jurisdiction unless "the plaintiff or his assignee *has pending* in any other court any suit or process against the United States . . . ." (emphasis added.) The Court notes that if the clarity of a statute was in contest, the Court must start with the plain meaning of the words in the statute. The plain language of § 1500 is that the CFC shall not have jurisdiction when there is another suit pending in the district court. If there is no suit filed in the district court on the day the CFC suit is filed then there is no suit pending if we give the word "pending" its plain or for that matter any logical meaning. Since jurisdiction in a case is and must be determined as of the date of filing the case, *Keene*, 508 U.S. at 207, it follows from the plain language of the statue that at the time of filing, if there is another case pending based on the same operative facts, then the jurisdiction does not exist and the case must be dismissed. However, the corollary of that rule is that if there is no pending case, then the jurisdiction is proper as of the moment of the filing. If that were not so, one would have to say that valid jurisdiction could always be divested by one party or the other filing a complaint based upon the same operative facts at any time during the litigation, perhaps even several years later. If jurisdiction in the CFC does not arise at the time of filing, then the corollary is that a party who filed in the district court prior to filing in the CFC could create jurisdiction in the CFC by dismissing the district court case. Logically, jurisdiction has to be measured at either the time of filing or it can appear or disappear or disappear and reappear at any time during the litigation. Since *Tohono O'Odham* states that the purpose of the statute is "to save the Government from the burdens of redundant litigation" *Tohono O'Odham* at 1730, the Government's interpretation makes no sense in light of *Tohono O'Odham's* holding.

Due to the order of filings, *Tohono O'Odham* does not affect this interpretation. In *Tohono O'Odham*, there was already a suit pending when the plaintiff filed in the CFC; thus, the *Tohono O'Odham* Court neither considered nor overruled *Tecon* in its application of § 1500. *See id.* at 1730. The instant case is unlike *Tohono O'Odham*, as YNHA filed the complaint with the CFC before filing in the district court. According to the plain language of § 1500, the district court case was not already "pending" when the Plaintiff filed suit in this Court. Consequently, the Court holds that the subsequent action in the district court does not preclude the Court from jurisdiction over the matter.

## 2. Prior filing in the Ninth Circuit

The Court now turns its attention to the complaint in this Court to compare it with the filing at the Ninth Circuit in order to determine whether or not the claims are two suits based on substantially the same operative facts. The Ninth Circuit case was dismissed in December 2010, almost two years after YNHA filed its claim in this Court. Thus, there was a claim "pending" against the United States when YNHA filed its complaint in the Court of Federal Claims, and the Court must consider whether the claims are "for or in respect to the same claim." *See Nez Perce Tribe v. United States*, No. 06-910L, 2011 WL 4498762, at *3 (Fed. Cl. Sept. 27, 2011).

Although the Ninth Circuit petition was pending when YNHA filed its complaint in this Court in 2008, the 2008 complaint asks this Court to consider new claims of damages for improperly withheld funds by HUD occurring after the date of filing in the Ninth Circuit and

pursuant to a newly enacted statute.  YNHA filed its petition with the Ninth Circuit for review of HUD's letter under the notice and hearing requirements laid out in 25 U.S.C. § 4161(d).  The letter was issued on November 2, 2004, stating that HUD would reduce YNHA's grant amounts for the years 1998 through 2002.

Unlike the 2005 petition for review, YNHA's complaint in this Court claims that it is entitled to recoup funding for all housing units excluded from the funding formula but included in the annual housing contracts starting in 1997 between YNHA and HUD.  *See* Oral Arg. Tr. 20:9-16.  This complaint is subject to the 2008 NAHASDA amendment, the Reauthorization Act, which changed the analysis of housing unit eligibility in the grant formula in § 1000.318.  Therefore, as Congress had not yet enacted the Reauthorization Act until 2008, any action pending prior to that year cannot be for or in respect to the same claim and cannot be precluded under § 1500.  These two cases are separate and different causes of action and, thus, are not affected by 28 U.S.C. § 1500. Thus, having addressed the threshold question as to whether the Plaintiff's claim triggers § 1500, the Court now turns its attention to the statute of limitation argument.

**B.   Some of Plaintiff's Claims Are Barred By The Statute of Limitations**

It is well settled that in order to fall within the statute of limitations, a plaintiff must file its complaint within six years after the claim accrues. 28 U.S.C. § 2501.   A claim accrues when "all events have occurred to fix the Government's alleged liability" and the plaintiff knew or should have known of the existence of his claim.  *Martinez v. United States*, 333 F.3d 1295, 1303, 1319 (Fed. Cir. 2003) (en banc) (internal quotations omitted).  "It is a plaintiff's knowledge of the facts of the claim that determines the accrual date."  *Young v. United States,* 529 F.3d 1380, 1385 (Fed. Cir. 2008).   Here, Defendant asserts that some of Plaintiff's claims are time barred because the claims accrued outside the six year parameter.  The Court agrees with the Defendant.

In this case, Plaintiff filed its complaint on November 24, 2008 and, shortly thereafter, filed an amended complaint.  The amended complaint seeks payment for FCAS units dating back to 1998.  Ordinarily, as the complaint was filed in 2008, claims that accrued between the years 1998 through 2002 should be time barred.   However, Plaintiff argues that the Reauthorization Act revived the barred claims in its explicit language giving tribes or tribally designated housing authorities a 45-day period to file suit based upon the prior version of the Reauthorization Act, Section 301(2); 25 U.S.C. § 4152(b)(1)(E).[4]

The Court does not agree.  First, YNHA's complaint contains no allegations that it did not know, and could not have known, the amount of HUD's payments to YNHA.  As the housing authority, YNHA would have been aware of the terms of its lease-to-own contracts.  There was

---

[4]  Congress' addition of subsection 4152(b)(1)(E) provided that the new subsections added by the Reauthorization Act adopting 24 C.F.R. § 1000.318 "shall not apply to any claim arising from a formula current assisted stock calculation or count involving an Indian housing block grant allocation for any fiscal year through fiscal year 2008, if a civil action relating to the claim is filed by not later than 45 days after October 14, 2008."

no reason that it could not have pursued whatever avenues of judicial review were available as the units became ineligible for funding under 24 C.F.R. § 1000.318, including filing a claim in this Court.  Second, the Court agrees with the recent decision in *Lummi Tribe v. United States*, 99 Fed. Cl. 584, 606 (2011) holding that 25 U.S.C. § 4152 does not provide an exception to the statute of limitations.  Instead, as the Defendant argues, and the Court agrees, the statute only allows for the retroactive application of a former statute to be filed within 45 days.  *Id*.  Furthermore, there is no indication either in the Reauthorization Act or its legislative history that indicates a congressional intent to revive stale claims.   Accordingly, read in context, the Reauthorization Act did not revive YNHA's claims that had expired.   Hence, the claims that accrued between the years 1998 through November 24, 2002 are untimely and must be dismissed.  Claims arising thereafter are timely, so the Court now turns to the question of whether NAHADA is money-mandating.

### C.  NAHASDA is a Money-Mandating Statute

Pursuant to the Tucker Act, 28 U.S.C. § 1505, this Court has jurisdiction over any  claim brought by an Indian tribe residing in the United States "whenever such claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President."  Defendant argues that YNHA must satisfy two distinct requirements, as clarified in the Supreme Court's decision in *Navajo III* in order for us to have jurisdiction. First, a tribe "must identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties."   *United States v. Navajo Nation*, 556 U.S. 287, 129 S.Ct. 1547, 1552 (2009) ("*Navajo III*"); *see United States v. Navajo Nation*, 537 U.S. 488, 506 (2003) ("*Navajo I*").  A "threshold" requirement for non-constitutional claims is the identification of "specific rights-creating or duty-imposing statutory or regulatory prescriptions" that establish the "specific fiduciary or other duties" that the Government allegedly has failed to fulfill.  *Navajo I*, 537 U.S. at 506.

If the tribe identifies a law that imposes specific obligations, a court may then proceed to the second inquiry, which requires the court to "determine whether the relevant source of substantive law can be fairly interpreted as mandating compensation for damages sustained as a result of a breach of the duties the governing law imposes."  *Navajo III*, 129 S. Ct. at 1552.  The law must be "reasonably amenable to the reading that it mandates a right of recovery in damages."  *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003).

Section 4111(a) of NAHASDA, "Block grants," provides that the Government has the authority to grant funds to Indian tribes:

(1) In general

For each fiscal year, the Secretary shall (to the extent amounts are made available to carry out this chapter) make grants under this section on behalf of Indian tribes –

(A)  to carry out affordable housing activities under part A of subchapter II of this chapter; and

(B) to carry out self-determined housing activities for tribal communities programs under part B of that subchapter.

Plaintiff contends that section 4111(a) of NAHASDA is a money-mandating statute that provides compensation for injuries sustained by a breach of the statute's obligations because NAHASDA binds the Secretary to utilize the particular formula, found in 25 U.S.C. § 4152 as amended in 2008, to allocate funding to Indian tribes, including YNHA.  Plaintiff relies on *Samish II* and a recent case, *AARA Energy*, in which this Court distinguished NAHASDA from other grant funding sources and stated that "a statute will be deemed to be a money-mandating source of law if it *compels* the government to make a payment to an identified party or group." *ARRA Energy Co. I v. United States*, 97 Fed. Cl. 12, 19 (2011) (emphasis added).

On the other hand, Defendant relies on *Samish Indian Nation v. United States* ("*Samish V*"), in which this Court held that statutes providing for future fund allocation rather than to compensate individual persons for past injuries are not money-mandating.  *Samish Indian Nation v. United States*, 90 Fed. Cl. 122, 132 (2009) ("*Samish V*") (referencing *Bowen*, 487 U.S. 879, 905 n.42 (1988)).  In *Samish V*, this Court relied on *Bowen* to the extent that federal grant-in-aid programs do not provide clear standards by which to compensate injured parties.  *Samish V*, 90 Fed. Cl. 122, 138 (2009).

However, the Court has already distinguished the jurisdictional issues raised in *Bowen* from NAHASDA.  *Lummi v. United States*, 99 Fed. Cl. 584, 594-97 (2011); *ARRA*, 97 Fed. Cl. at 38 ("[T]he principal issue addressed in *Bowen* was not the limits of this court's jurisdiction under the Tucker Act; rather, the dispute in that case was related to the jurisdiction of the district courts under the APA.").  The Court held in *Lummi v. United States* that NAHASDA is a money-mandating statute and a claim for monetary relief under NAHASDA "falls squarely within this [C]ourt's jurisdiction." *Lummi*, 99 Fed. Cl. at 597.  Moreover, the statute discussed in *Samish V* provides federal discretion for subsidizing funding expenditures, whereas NAHASDA compels HUD to allocate funding to YNHA.  When a statute leaves no room for government discretion, Congress has provided a money-mandating source for this Court.  *Wolfchild,* 96 Fed. Cl. 302 (2010) (citing *Samish Indian Nation v. United* States, 419 F.3d 1355 (Fed. Cir. 2005) ("*Samish II*")).  Therefore, the Court holds that the statute is money-mandating and thus, this Court has jurisdiction.[5]

---

[5]  Defendant argues that in count two of its amended complaint, YNHA raises the due process clause of the Fifth Amendment. To the extent that the amended complaint could be construed as contending that the due process clause is money mandating, such an argument appears contrary to precedent.  However, since the issue of whether the Fifth Amendment's due process clause is money mandating has only been discussed by implication from the amended complaint, resolving it here is unnecessary.  *But see* Leblanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995).

**D.  The Anti-Deficiency Act does not bar the Relief Sought by YNHA**

Defendant raises two arguments that the Anti-Deficiency Act, 31 U.S.C. § 1341(a)(1)(A) ("ADA") bars this Court's ability to provide a monetary remedy for the plaintiffs.  First, relying on *Samish V*, this Court held that, even if the Court possesses jurisdiction to provide a monetary remedy when grant funds are not properly disbursed, the Anti-Deficiency Act limits the Court's ability to grant relief.  *Samish V*, 90 Fed. Cl. at 133 n.10.   Second, Defendant asserts that YNHA is barred from relief under NAHASDA because the ADA prohibits an agent of the Government from authorizing funds exceeding the amount appropriated for the expenditure.  NAHASDA has already distributed its funds for the fiscal year, and consequently it cannot draw up more funds to provide compensation for the Plaintiff.

In response, Plaintiff asserts that YNHA's grant agreement with HUD distinguishes its case from *Samish V*, which did not involve the Indian tribe's reliance upon the loan program. *See Samish V*, 90 Fed. Cl. at 127 (noting the tribe's claim was based upon undergoing years without recognition by the Government as an Indian tribe and being excluded from consideration from the relevant loan programs).  Consequently, the contract between YNHA and HUD would preclude reliance on the ADA.  *See Wetsel-Oviatt Lumber Co. v. United States*, 38 Fed. Cl. 463, 570 (1997).  The Court agrees.

As Judge Wiese stated in *Lummi*, NAHASDA is a "permanent revolving appropriation by Congress," strengthening the Plaintiff's assertion that providing monetary relief to YNHA would not exceed the funds allocated to the NAHASDA program.  *Lummi*, 99 Fed. Cl. at 605.  Any unused funds remain in NAHASDA and are rolled over and included in the following year's appropriation.  As a permanent revolving appropriation, the Court agrees with the Plaintiff that the ADA does not govern NAHASDA in this claim and does not bar relief to the Plaintiff.

**E.  Congress has not Precluded the Court from Jurisdiction**

Plaintiff argues that because HUD did not provide YNHA a hearing, HUD violated the exclusive remedial scheme set forth in NAHASDA.  Specifically, Plaintiff contends that HUD violated the notice and hearing requirements in NAHASDA §§ 4161 and 4165.  Plaintiffs assert that sections 4161 and 4165 do not preclude this Tucker Act jurisdiction in this Court, as Congress expressly identified remedies accorded to HUD, and thus cannot preclude claims for damages based on HUD's violation of the provisions.  *See Acceptance Ins. Cos. v. Untied States*, 503 F.3d 1328, 1336 (Fed. Cir. 2007); *U.S. Home Corp. v. United States*, 92 Fed. Cl. 401, 409 (Fed. Cl. 2010).

By making this assertion, Defendant argues that Plaintiff pleads itself out of this court because the asserted remedial scheme in § 4161(a)(1) vests jurisdiction in the court of appeals. Pursuant to this statute, the Secretary of HUD must terminate, reduce, or limit payments to a tribe or TDHE if the Secretary finds after reasonable notice and opportunity for a hearing that the recipient failed to comply substantially with any provision of NAHADA. This sub-section further provides that a recipient of a notice of a reduction in grant payments, may, not later than 60 days after receiving notice of such action, file a petition for review of the Secretary's action with the United States Court of Appeals for the circuit in which the state of the recipient is

located, or in the United States Court of Appeals for the District of Columbia Circuit.   § 4161(d)(1).  The statute requires the Secretary to file with the court a record of the proceeding upon which HUD based its action.  *Id.* at § 4161(d)(2).  Upon the filing of the record with the court, the jurisdiction of the court "shall be exclusive and its judgment shall be final" except that the judgment may be reviewed by the Supreme Court.  Therefore, Defendant concludes that because the statute provides for review of a claim in another court, this court lacks jurisdiction.

The Court rejects Defendant's argument and holds that Congress has not precluded this Court from having jurisdiction over claims involving HUD's violation of NAHASDA.  The prescribed jurisdiction expressed in § 4161(d)(1) is limited to a review of a final agency decision, an action which is properly characterized as one against the agency itself and not the United States.  *See Acceptance Ins. Cos. v. United States*, 503 F.3d 1328, 1338 (Fed. Cir. 2007) (distinguishing a claim against an agency from a claim against the United States).  Furthermore, it is clear that § 4161 "does not present a 'specific and comprehensive scheme for administrative and judicial review' of all claims involving NAHASDA.   Instead, section 4161 merely authorizes the circuit court to hear challenges to determinations made under section 4161(a), following the requisite notice and hearing procedures set forth in that section. Only upon the filing of the record with the circuit court does jurisdiction become exclusive, and then only with respect to the claim at issue (*i.e.,* a challenge to the section 4161(a) determination)." *Lummi,* 99 Fed. Cl. at 600.

Furthermore, YNHA does not seek prospective or equitable damages but monetary damages against HUD for breaching its annual NAHASDA funding agreement with YNHA by reducing YNHA's block grant funding without complying with the mandatory notice and hearing requirements imposed by 25 U.S.C. §§ 4161 and 4165.  Accordingly, the Court can find nothing in NAHASDA that precludes the Court from jurisdiction to hear the Plaintiff's claim under the Tucker Act.  The claim before this Court goes to the merits of the funding denial not its procedural regularity.

As the Court held in *Lummi*, this Court agrees and similarly holds that § 4161 does not divest this Court of jurisdiction as well as its holding that § 4161  does not provide Plaintiffs with a separate ground for relief in this Court.  The Court, therefore, dismisses Plaintiffs' claim for relief for alleged violations of 25 U.S.C. § 4161.

## F.  A Trust Relationship Exists

Lastly, the Court turns to the question of whether a trust relationship exists between the Plaintiff and Defendant.  For a plaintiff to properly bring a breach of trust claim, the plaintiff must have a trust relationship with the Government that gives rise to a fiduciary duty.  A fiduciary duty exists when there is a trustee, a beneficiary, and a trust corpus. *See United States v. Mitchell,* 463 U.S. 206, 225 (1983) ("*Mitchell II*").  Defendant argues that a congressional appropriation is not a trust relationship, relying upon the Supreme Court case *Quick Bear v. Leupp,* 210 U.S. 50 (1998) and *Samish V.*  Furthermore, Defendant contends that the Government owes no fiduciary duty to YNHA because a fiduciary duty arises from the obligation to hold or manage the trust corpus.  *United States v. Mitchell*, 445 U.S. 535, 543-44

(1980) ("*Mitchell I*").  Defendant claims that the Government retains no control or authority over the suggested trust corpus, the appropriated funds, once dispersed to YNHA.

Plaintiff argues that pursuant to NAHASDA, HUD controls the grants made to Indian tribes, thus creating a trust corpus and giving rise to the Government's fiduciary duty.  Although the existence of a trust is not explicit in NAHASDA, the Government has substantial control over the tribal monies through its authority to, *inter alia,* allocate the funds, terminate payments, reduce payments, and limit their permitted uses.  It is clear to the Court that the purpose of NAHASDA is to promote the general welfare of the Indian tribes, creating a trust relationship. Congress has explicitly defined NAHASDA's purpose in 25 U.S. § 4101, noting that a unique relationship exists between the Government and the Indian tribes, creating a "unique . . .  trust responsibility." This purpose, compounded by HUD's significant control over grant funds, creates an enforceable trust relationship.  Although the Government, acting through HUD, has allegedly breached its fiduciary duty by withholding funds mandated by NAHASDA, both parties have conceded in their oral arguments that the breach to be considered is through the parties' annual grant agreements allocating funding through NAHASDA. Thus, this Court considers the claim for the Government's alleged withholding of tribal monies a claim for breach of contract rather than a breach of fiduciary duties.

## CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss.  The Judge's law clerk will contact the parties to set a date for a scheduling conference.

It is so **ORDERED.**

s/ Loren A. Smith
LOREN A. SMITH,
Senior Judge